

**U.S. Department of Justice**
*United States Attorney*
*District of New Jersey*

---

*Kendall Randolph*
*Special Assistant U.S. Attorney*

*970 Broad Street, Suite 700*
*Newark, New Jersey 07102*

*Direct Dial: (973) 645-3659*

May 12, 2021

**VIA ECF**
Honorable Anne E. Thompson
United States District Court
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

Re:   <u>United States v. Jesse William Korff</u>, Crim. No. 14-471 (AET)

Dear Judge Thompson:

The Government respectfully submits this letter brief in opposition to defendant Jesse William Korff's (herein after "Korff" or the "Defendant") request to be transferred to home confinement or for a reduction in sentence pursuant to the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A).  ECF #86.  Korff seeks to cut short his 110-month sentence based on a generalized fear of COVID-19 and other complaints.  The Court should deny Korff' motion.

First, only the Bureau of Prisons ("BOP") can order Korff be transferred to home confinement, and it has declined to do so.  Second, Korff does not meet the criteria for compassionate release under the framework set forth by 18 U.S.C. § 3582(c)(1)(A).  Korff has no medical condition placing him at an increased risk of serious illness from the virus, and he has recently refused to receive the COVID-19 Moderna vaccine offered to him by his place of incarceration.  Indeed, the Federal Public Defender's Office ("FPD") declined to enter a notice of appearance in this matter on Korff's behalf.[1]  Third, even were Korff able to satisfy the criteria for compassionate release, the § 3553(a) factors, specifically the seriousness of the Defendant's offense, weigh against reducing his prison sentence.

## I.   Background

On August 12, 2014, Korff pleaded guilty before the Honorable Peter G. Sheridan, for this Court, to an eleven-count Information, which charged him

---

[1] The FPD informed the Court of its determination regarding Korff's case on or about April 20, 2021 and the Court noted this in a letter to the parties dated May 3, 2021. Dkt #21.

with: (1) five counts of knowingly developing, producing, stockpiling, acquiring, retaining, and possessing a toxin, as defined by Title 18 United States Code, Section 178(2), to wit, ricin and abrin, for use as a weapon, and attempting to do the same, on or about September 2, 2013, on or about October 25, 2013, on or about December 4, 2013, on or about December 1, 2013, and on or about January 15, 2014, respectively, each in violation of Title 18 United States Code, Section 175(a); (2) five counts of fraudulently and knowingly exporting and sending from the United States, and attempting to export and send from the United States, merchandise, articles, and objects, including toxins, as defined by Title 18 United States Code, Section 178(2), to wit, ricin and abrin, and the possession and transfer of which are prohibited under Title 18 United States Code, Section 175(a), and receiving, concealing, buying, selling and in any manner facilitating the transportation, concealment, and sale of such merchandise, articles and objects, prior to exportation, knowing the same to be intended for exportation, on or about September 2, 2013, on or about October 25, 2013, on or about December 4, 2013, on or about December 1, 2013, and on or about January 15, 2014, respectively, each in violation of Title 18 United States Code, Section 554(a); and (3) one count of, from in or around November 2013 through on or about January 18, 2014, knowingly and intentionally conspiring and agreeing with others to commit at a place outside the United States an act that would constitute the offense of murder if committed in the special maritime and territorial jurisdiction of the United States, and committing an act within the jurisdiction of the United States to effect the object of the conspiracy, in violation of Title 18, United States Code, Section 956(a)(1). PSR ¶¶ 1-4.[2] On February 19, 2015, your Honor sentenced Korff to a term of imprisonment of 110 months and five years of supervised release. Korff is currently serving his sentence at the Federal Correction Institute Jesup ("FCI Jesup")[3]. On or about April 19, 2021, Korff filed a *pro se* letter to the Court seeking a reduction of his prison sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) in light of the COVID-19 pandemic. According to the BOP, the Defendant's estimated release date, assuming good time credit, is December 06, 2021. *See* BOP Inmate Information, https://www.bop.gov/inmateloc.

## II.    Korff Has Exhausted His Administrative Remedies.

The Defendant appears to have exhausted his administrative remedies, as statutorily required. A court may grant a defendant's own motion for a

---

[2] "PSR" refers to the final presentence report prepared by the U.S. Probation Department ("Probation"), dated December 31, 2014.

[3] Korff's pro se filing is addressed from FCI Coleman-Medium, however according to the BOP, he is currently incarcerated at FCI Jesup. *See* BOP Inmate Information, https://www.bop.gov/inmateloc (last accessed on May 8, 2021). As of on or about May 8, 2021, FCI Jesup had one positive inmate case and zero positive staff cases of COVID-19. *See* COVID-19 Cases, BOP, *available at* http://bop.gov/coronavirus (last accessed on May 8, 2021).

reduction in his sentence *only* if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The requirement that a defendant either exhaust administrative appeals or wait 30 days after presenting a request to the warden before seeking judicial relief is mandatory and must be enforced by the Court. As the Third Circuit confirmed, where 30 days have not passed following presentation of a request to a warden, the statute "presents a glaring roadblock foreclosing compassionate release at this point." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also United States v. Epstein*, No. 14-cr-287, 2020 WL 1808616 (D.N.J. Apr. 9, 2020) (Chief Judge Wolfson relying on *Raia* to deny motion by defendant who failed to wait 30 days or exhaust administrative remedies).

BOP records show that on or about February 1, 2021, the Defendant requested compassionate release/reduction in sentence based on medical circumstances/medical conditions. More specifically, the Defendant requested that the BOP exercise its authority to grant him compassionate release based his fears about the risk of contracting COVID-19 while in prison and various representations about his fear of retaliation by other inmates and staff in his then-BOP facility. On February 24, 2021, the BOP denied his request after reviewing his records and request and determining that he was ineligible based on the requirements set forth by the BOP. Because thirty days have elapsed, the government believes the exhaustion requirement has been satisfied.

### III. The Court Cannot Direct the BOP to Place Korff on Home Confinement.

Korff asks the Court to order the BOP to transfer him to home confinement. ECF #19 at 1. This Court should deny Korff's request. Despite the guidelines set forth in the Attorney General's March 26 and April 3, 2020 memoranda regarding the increased availability of home confinement in light of the COVID-19 pandemic,[4] district courts have no authority to direct BOP to place a defendant in home confinement. *United States v. Voda*, 994 F.2d 149, 151-52 (5th Cir. 1993). Rather, such designation decisions are committed solely to BOP's discretion. *See* 18 U.S.C. § 3621(b); *Moore v. United States Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973) (per curiam); *see also McKune v. Lile*, 536 U.S. 24, 39 (2002) (plurality opinion) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise.").

---

[4] Memoranda available at: https://www.bop.gov/coronavirus/faq.jsp.

- 3 -

Moreover, a prisoner has no constitutional right to confinement in any particular place, including in home confinement. *See Sandin v. Conner*, 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons."). And Section 3582(c)(1)(A) permits only a reduction in "the term of imprisonment," not a change in the place of imprisonment. Home confinement merely permits the inmate to serve out the term of imprisonment at home. Such a request therefore falls outside § 3582(c)'s limited grant of authority to this Court to modify a sentence post-conviction. Absent any other statutory authority—and Korff cites none—this Court has no authority to grant such relief in this forum.

## IV.   Korff Presents No Extraordinary or Compelling Reason for Compassionate Release.

Korff seeks compassionate release, but he falls short of establishing the criteria for such relief. As the basis for his request, Korff cites generalized fears about COVID-19 and the facility where he was housed, FCI Coleman-Medium. Korff also includes concerns about his recent treatment by BOP staff and an incident which Korff alleges was a "clear and obvious violation of petitioner's Eighth Amendment Right against cruel or unusual punishment." ECF #19 at 2. However, Korff fails to allege any extraordinary or compelling circumstances still applicable to him. Additionally, Korff notes that he has a "home confinement date" of June 6, 2021. *Id.* Indeed, BOP records show that this date, which is less than one month, is listed as Korff's date of Home Detention Eligibility.

As the movant, the defendant bears the burden to establish that he is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014); *United States v. Epstein*, Crim. No. 14-287 (FLW), 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020). As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, Crim. No. 15-3764, 2019 WL 2403192, at *3 (D.N.M. June 7, 2019) (citations omitted). Compassionate release is only available if, "after considering the factors set forth in [18 U.S.C.] § 3553(a) to the extent that they are applicable," the Court finds "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Guidelines identify the "extraordinary and compelling reasons" that may justify compassionate release. *See* U.S.S.G. § 1B1.13.

Korff has not come close to meeting his burden, nor could he based on the facts here.

First, Korff does not allege that he has any CDC-enumerated medical conditions that would place him at higher risk for severe illness for COVID-19.[5] And available documentation supports this conclusion. Notably, the PSR does list significant details about the physical and mental health history and conditions of Korff.  PSR ¶¶ 129-170.  There is no mention in the Defendant's pro-se submission of any medical conditions.  Defendant argues that the COVID-19 pandemic subjects him to a heightened health risk and entitles him to immediate release from confinement.  Yet, Defendant has just recently refused receipt of the Moderna COVID-19 vaccine and has not provided details on any underlying and ongoing health conditions that would put him at substantial risk upon possible reinfection. He is not elderly and, with the exception of Defendant's existing physical and mental health conditions, he does not presently present with health conditions that make him particularly susceptible to COVID-19 complications.  A review of medical records from BOP reveals that the only ongoing medical problems which Korff appears to have are the same as those outlined in the PSR, which include pain stemming from an injury sustained by Korff at the age of five and mental health struggles that may stem from substance abuse. While the Government is sensitive to Korff's various physical and mental health struggles and conditions, it does note that Korff has been treated continuously while in the care of BOP medical staff. This fact strongly suggests that BOP is more than capable of treating him still.

Second, Korff is incarcerated at FCI Jesup currently, and he points to his generalized concerns over the conditions at FCI Coleman-Medium in his submission in support of his motion for relief, arguing that such conditions "border on a NAZI holocaust camp."  ECF No. 19 at 3.  The Government is certainly sensitive to the issues the Defendant raises, and we do not minimize the concern or the risk.  The Defendant's particular risk of potential exposure and infection of COVID-19, however, is not an extraordinary and compelling reason to grant him compassionate release.  *Raia*, 954 F.3d at 59 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]"); *United States v. Gileno*, No. 3:19-cr-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) (denying compassionate release because BOP's proposed plan adequately addresses the COVID-19 pandemic).  After all, "the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."  *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) (per curiam) (not precedential).

---

[5] *See* People with Certain Medical Conditions, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

Further, while Korff alleges that the conditions at his former facility, FCI Coleman-Medium, have been a "hub, tinderbox, and petri dish" for COVID-19 since July 1, 2020, the government disagrees with this characterization. ECF #19 at 3. It appears that the pandemic is not adversely impacting Korff's currently facility, FCI Jesup, at this juncture and that, to the extent there was an outbreak at FCI Jesup, BOP has taken appropriate measures.  As several other courts have recognized, BOP's success in this respect counsels against compassionate release.  *See United States v. Hylander*, No. 18-CR-60017, 2020 WL 6135047, at *4 (S.D. Fla. Oct. 18, 2020) (denying motion for compassionate release, even though "FCI Jesup has experienced a marked increase in COVID-19 cases, calling into question the efficacy of the Bureau of Prison's response to the health crisis"; defendant was able to receive proper medical care and remained a danger to the community); *United States v. Moore*, Crim. No. 17-293, 2020 WL 6076318 (N.D.N.C. Oct. 15, 2020) (Defendant failed to establish an "extraordinary and compelling reason" where his medical conditions did not include any of the conditions identified by the CDC as heightening the risk of severe injury or death were he to contract COVID-19, the defendant was able to provide self-care and FCI Jesup had no inmates positive for COVID-19); *United States v. Lloyd,* No. 2:11CR36, 2020 WL 4501811, at *2 (E.D. Va. Aug. 5, 2020) (denying a motion for compassionate release despite the defendant's documented medical conditions that increased his risk of severe illness from COVID-19 where "the outbreak at FCI Jesup appears to have passed, as there are currently only four inmates with positive COVID-19 test results, with 252 inmates having recovered.  Although FCI Jesup has had one inmate fatality, such lone fatality represents a very low percentage of the total number of inmates that have tested positive at that facility."); *See, e.g. United States v. Buchanan*, 2020 WL 3790589 at *3 (N.D. Ind. July 7, 2020) (While FCI Elton continued to have a COVID-19 outbreak, over 586 inmates had recovered from the virus, and FCI Elton's "progress in fighting the virus" did "not compel release" absent "aggravating medical conditions" that would "place [the defendant] at significant risk of complications should he contract the virus."); *United States v. Gallman*, 2020 WL 3412995 at *1, *3-5 (D. Ma. June 22, 2020) (denying defendant's motion to serve the remainder of his 11-year sentence on home confinement because of the COVID-19 outbreaks at Butner; irrespective of defendant's underlying health issues that placed him at higher risk for suffering severe complications for COVID-19, conditions at Butner had improved in recent weeks and there was a need for "specific deterrence."); *United States v. Svirskiy*, No. CR 14-10363-RGS, 2020 WL 2798099, at *1 (D. Mass. May 29, 2020) (denying the defendant's motion for compassionate release where he failed to establish that there was an extraordinary and compelling reason for his release where he was in "good health" and there was no indication that there was "a risk of infection greater by any degree of magnitude than that faced by the prison population in general, or for that matter, society at large").  Thus, to date, it appears that the steps taken by FCI

Jesup have successfully mitigated against the spread of COVID-19 at its facility, and Korff's risk of contracting COVID-19 would not be less if his motion were granted.

Additionally, the availability of safe and effective vaccines negates the requisite extraordinary and compelling reasons needed for a Section 3582-based sentence reduction.  According to BOP records, Korff refused to receive the Moderna COVID-19 Vaccine on May 5, 2021.

The defendant has been offered a vaccine approved by the FDA for emergency use based on its conclusion that, in extensive testing, the vaccine was approximately 95% effective in preventing COVID-19 infection, including in participants with medical comorbidities associated with high risk of severe COVID-19. See FDA Decision Memorandum, Moderna – Dec. 18, 2020, https://www.fda.gov/media/144673/download.

Various studies continue to confirm the efficacy of the vaccines. For instance, on April 1, 2021, Pfizer reported its follow-up study on the 44,000 participants in its Phase 3 trial. It found that the vaccine, based on mRNA technology (like the Moderna vaccine), was 91.3% effective against COVID-19, measured seven days through up to six months after the second dose, across age, gender, race, and ethnicity demographics, across participants with a variety of underlying conditions, and during a period through March 13, 2021, when variants were circulating. Pfizer further found that the vaccine was 100% effective against severe disease as defined by the CDC and 95.3% effective against severe disease as defined by the FDA. https://www.businesswire.com/news/home/20210401005365/en/.

The CDC likewise recently reported the effectiveness of the Pfizer and Moderna vaccines in preventing infection during the same period, and concluded that its extensive data "reinforce CDC's recommendation of full 2-dose immunization with mRNA vaccines. COVID-19 vaccination is recommended for all eligible persons . . . ." "Interim Estimates of Vaccine Effectiveness," https://www.cdc.gov/mmwr/volumes/70/wr/mm7013e3.htm (Mar. 29, 2021).

Putting aside the other reasons compassionate release isn't available to Korff, cases hold, now almost daily, vaccine availability alone means the risk of contracting COVID-19 is no longer an extraordinary and compelling reason for sentence reduction.  When coupled with a failure to be vaccinated, inmates, like Korff, cannot get such relief.  *See, e.g.*, *United States v. Baeza-Vargas*, 2021 WL 1250349, at *2-3 (D. Ariz. Apr. 5, 2021) (Teilborg, J.) ("Judges of this Court, as well as others around the country, have ruled with consistency that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances.") (citing more than a dozen cases); *United States v.*

- 7 -

*Greenlaw*, 2021 WL 1277958, at \*7 (D. Me. Apr. 6, 2021) (Woodcock, J.) (the court reviews CDC guidance and numerous other decisions and concludes, "The risk-benefit analysis in favor of inoculation is so overwhelming that the Court holds Mr. Greenlaw's refusal to be vaccinated against his motion for compassionate release."); *United States v. Ortiz*, 2021 WL 1422816, at \*3 & \*5 n.6 (E.D. Pa. Apr. 15, 2021) (Leeson, J.) (relief is denied because the defendant recovered from COVID-19, likely affording a measure of immunity, and he declined the vaccine; the court agrees with recent decisions that the defendant's "refusal to be vaccinated in the absence of a legitimate medical justification is fatal to his motion for compassionate release," adding, "common sense dictates that finding otherwise would risk creating perverse incentives. Overlooking a medically at-risk petitioner's refusal of an available vaccine and granting him compassionate release would likely incentivize other medically at-risk prisoners to decline an offer of a vaccine, putting themselves and others at risk.").

The CDC likewise recently reported the effectiveness of the Pfizer and Moderna vaccines in preventing infection during the same period, and concluded that its extensive data "reinforce CDC's recommendation of full 2-dose immunization with mRNA vaccines. COVID-19 vaccination is recommended for all eligible persons . . . ." "Interim Estimates of Vaccine Effectiveness," https://www.cdc.gov/mmwr/volumes/70/wr/mm7013e3.htm (Mar. 29, 2021).

Thus, in *United States v. Jackson*, 2021 WL 1145903 (E.D. Pa. Mar. 25, 2021), the court denied relief even though the defendant was 58 years old and suffered from, among other conditions, obesity (BMI of 31.2), type II diabetes, hypothyroidism, hypertension, asthma, and high cholesterol, explaining:

> However, Jackson was offered the Moderna COVID-19 vaccine on January 6, 2021 and elected not to be vaccinated. Thus it seems that Jackson has voluntarily declined to "provide self-care" and mitigate her risk of a severe COVID-19 infection. The FDA approved the Moderna vaccine for use after extensive testing, concluding that it is 95% effective in preventing infection and virtually entirely effective in preventing severe disease, including in participants with medical comorbidities associated with high risk of severe COVID-19. See Food and Drug Administration, Emergency Use Authorization, https://www.fda.gov/media/144673/download (Dec. 18, 2020). There is no apparent medical reason that Jackson should not receive the vaccine. It was offered

- 8 -

> to her by FCI Danbury's medical staff. As her medical
> records note, she merely "refused." Where Jackson
> bears the burden of demonstrating her entitlement to
> relief, the Court finds that her unexplained refusal to
> accept a COVID-19 vaccination when offered negates
> her otherwise compelling medical reasons for release.

*United States v. Jackson*, 2021 WL 1145903, at *2 (E.D. Pa. Mar. 25, 2021)
(Beetlestone, J.). Another judge wrote:

> Defendant cannot establish that his conditions are
> exceptional and demand immediate release when he
> intentionally prevents the BOP from mitigating
> dangers to his health and safety. 18 U.S.C.
> § 3582(c)(1)(A). A prisoner cannot on the one hand
> point to the risk of severe illness, while on the other
> hand refuse to participate in basic precautionary
> measures such as vaccination. Allowing federal
> prisoners to qualify for compassionate release by
> declining to receive a COVID-19 vaccine, without
> justification, would discourage prisoners from
> becoming vaccinated. The court is exceedingly hesitant
> to provide prisoners an incentive to increase their risk
> of contracting COVID-19 and developing severe
> symptoms. Such a result would be profoundly
> counter-productive and would militate against the
> ameliorative purposes of compassionate release.
> Denial of Defendant's request for release is warranted
> on this basis alone.

*United States v. Austin*, 2021 WL 1137987, *2 (E.D. Mich. Mar. 25, 2021)
(Cleland, J.); *see also, e.g.*, *United States v. Jackson*, 2021 WL 806366, at *1-2
(D. Minn. Mar. 3, 2021) (Magnuson, J.) ("Jackson's decision to refuse the
vaccine flies in the face of any medical recommendation regarding the vaccines.
While he is within his rights to refuse any treatment he wishes to forego, he
cannot simultaneously claim that he must be released because of the risk of
complications while refusing a vaccine that could virtually eliminate that
risk."); *United States v. Williams*, 2021 WL 321904 (D. Ariz. Feb. 1, 2021)
(Rayes, J.) (defendant's explanation for refusal was "incredible in light of his
claim that his risk of a serious illness from the COVID-19 virus is an
extraordinary and compelling reason for his immediate release"); *United States*

*v. Garcia*, 2021 WL 1499312, at *3 (C.D. Ill. Apr. 16, 2021) (Mihm, J.) ("Courts across the country appear to have consistently ruled that an inmate's refusal of a COVID-19 vaccine weighs against a finding of extraordinary and compelling circumstance to justify relief. . . . Indeed, while Defendant is not obligated to take the vaccine, it is inconsistent for him to both claim fear of risk of contracting the virus while refusing medical treatment that would drastically reduce his risk."); *United States v. Lohmeier,* 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021) (Tharp, J.) ("In declining vaccination (twice), Mr. Lohmeier declined the opportunity to reduce his risk exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction."); *United States v. Gonzalez Zambrano*, 2021 WL 248592 (N.D. Iowa Jan. 25, 2021) (Williams, J.) (denied based on 3553(a) factors, but states: "It would be paradoxical to endorse a system whereby a defendant could [proffer] extraordinary and compelling circumstances for compassionate release" by refusing "health care [offered] to them"); *United States v. Baptiste-Harris*, 2021 WL 1583081, at *2 (D. Me. Apr. 22, 2021) (Torreson, J.) ("The Defendant offers no support for the idea that he can argue that he is in harm's way, reject measures to mitigate the harm, and then use the continued risk of harm as a justification for release. . . . He cannot, on the one hand, listen to the Centers for Disease Control's advice about who is most at risk of serious illness, but then ignore the same agency's advice to get a vaccine."); *United States v. Gianelli*, 2021 WL 1340970 (D. Mass. Apr. 9, 2021) (Gorton, J.) ("Although defendant has the right to refuse medical treatment, this Court will not reward such refusal to protect himself with a get-out-of-jail card.").

Nearly all courts agree with these views.[6] *See, e.g.*, *United States v. Martinez*, 2021 WL 718208, at *2 (D. Ariz. Feb. 24, 2021) (Logan, J.); *United States v. Figueroa*, 2021 WL 1122590, at *5 (E.D. Cal. Mar. 24, 2021) (Mueller, C.J.) ("If defendants could buttress their motions for compassionate release by refusing a safe and effective vaccine, they would be operating on an unfairly perverse incentive."); *United States v. Piles*, 2021 WL 1198019, at *3 (D.D.C. Mar. 30, 2021) (Bates, J.); *United States v. Reynoso*, 2021 WL 950081, at *2 (D. Mass. Mar. 12, 2021) (Gorton, J.) ("[T]he sincerity of his concern for his health is dubious given that he rejected the opportunity to receive the COVID-19 vaccine"); *United States v. Toney*, 2021 WL 1175410, at *1 (E.D. Mich. Mar. 29,

---

[6] This string cite provides just some of the numerous decisions in recent months affirming this point. The government will provide additional citations to the Court at its direction.

2021) (Levy, J.); *United States v. King*, 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021) (Seibel, J.); *United States v. Mascuzzio*, 2021 WL 794504, at *3 (S.D.N.Y. Mar. 2, 2021) (Keenan, J.); *United States v. McBride*, 2021 WL 354129, at *3 (W.D.N.C. Feb. 2, 2021) (Bell, J.); *United States v. French*, 2021 WL 1316706, at *6 (M.D. Tenn. Apr. 8, 2021) (Richardson, J.) (relief denied in part based on refusal of vaccine); *United States v. Pruitt*, 2021 WL 1222155, at *3 (N.D. Tex. Apr. 1, 2021) (Boyle, J.).

Defendants have contested this consensus, pointing out that the vaccines may not be 100% effective, that they were not tested in a congregate setting, that they may not be effective for all individuals, that variants may emerge that bypass the vaccines, and that the vaccines may cause side effects. These courts and others have almost uniformly rejected these arguments. One explained:

> Given that Rodriguez is or will soon be fully vaccinated against COVID-19, the Court concludes that Rodriguez's obesity and hypertension are not extraordinary and compelling reasons justifying his release. . . . Rodriguez argues that it is unclear how effective the Pfizer vaccine is, how long its effects will last, and whether it protects against the COVID variants, leaving a risk that he could still become seriously ill. Although all evidence to date is that the Pfizer vaccine is very effective, no one claims that it is 100 percent effective, and thus there remains a small risk that Rodriguez could be infected by COVID-19 and become seriously ill from that infection. But every prisoner runs a small risk of lots of serious medical conditions (including COVID-19). The small risk that Rodriguez may contract COVID-19 and become seriously ill is simply too speculative to justify his release.

*United States v. Rodriguez*, 2021 WL 1187149, at *1-2 (D. Minn. Mar. 30, 2021) (Schlitz, J.). Accordingly, the prevailing view is that "absent some shift in the scientific consensus, vaccination against COVID-19 would preclude the argument that a defendant's susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)." *United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) (Ludington, J.); *see also, e.g., United*

- 11 -

*States v. White*, 2021 WL 964050, at *2 (E.D. Mich. Mar. 15, 2021) (Levy, J.)
(denied after first dose, and rejects speculation regarding future effectiveness
against variants: "Defendant is free to renew his motion should more
information emerge suggesting that the Pfizer vaccine cannot protect him from
new imminent strains of COVID-19. However, at this time, the Court does not
find extraordinary and compelling circumstances based on that speculation.");
*United States v. Kariblghossian*, 2021 WL 1200181, at *3 (C.D. Cal. Mar. 29,
2021) (Snyder, J.) ("Nonetheless, at this time, the available scientific evidence
suggests that the Pfizer vaccine is highly effective against known variants of the
SARS-COV-2 virus that causes COVID-19) (citing CDC studies and Yang Liu,
et. al., Neutralizing Activity of BNT162b2-Elicited Serum, The New England
Journal of Medicine (March 8, 2021),
https://www.nejm.org/doi/full/10.1056/NEJMc2102017?query=featured_ho
me)); *United States v. Goston*, 2021 WL 872215, at *3 (E.D. Mich. Mar. 9, 2021)
(Levy, J.) (finding the potential that the Pfizer vaccine does not protect against
variants inadequate to justify release); *United States v. Brown*, 2021 WL
1154207, at *3 (S.D.N.Y. Mar. 26, 2021) (Wood, J.) (speculation about variants
is insufficient); *United States v. Del Rosario Martinez*, 2021 WL 956158, at *3
n.10 (S.D. Cal. Mar. 10, 2021) (Anello, J.) (declining to rely on a frequently
submitted declaration of Dr. Tara Vijayan, stating, "with all due respect to Dr.
Vijayan's expertise and experience, the Court declines to contribute in any
fashion to public skepticism regarding the safety and efficacy of the available
COVID-19 vaccines or to second-guess the Food and Drug Administration's
findings and decision to issue Emergency Use Authorizations for COVID-19
vaccines 'for which there is adequate manufacturing information to ensure its
quality and consistency.' The Path for a COVID-19 Vaccine from Research to
Emergency Use Authorization, available at
www.FDA.gov/COVID19vaccines#FDAVaccineFacts (last visited 3/9/2021).");
*United States v. Greenlaw*, 2021 WL 1277958, at *7 (D. Me. Apr. 6, 2021)
(Woodcock, J.) ("The potential side effects from the vaccination are trivial in
comparison to the severe illness, including death, Mr. Greenlaw may endure if
he contracts the virus. Moreover, the same CDC that Mr. Greenlaw cites [listing
possible side effects of the vaccine] unequivocally recommends that people get
vaccinated").

It is possible that the scientific consensus may shift dramatically if
vaccine-resistant variants emerge or the vaccines prove less efficacious than
studies to date suggest. If those possibilities materialize, nothing would prevent
the defendant from filing another motion for compassionate release. *United*

*States v. Singh*, 2021 WL 928740, at *3-4 (M.D. Pa. Mar. 11, 2021) (Brann, J.) ("Indeed, the majority of CDC recommendations for fully vaccinated people indicate that the CDC's primary concern is not with fully vaccinated individuals being hospitalized due to COVID-19, but with such individuals potentially spreading the virus to unvaccinated individuals. . . . It is, of course, possible that future research will demonstrate that current, or future, COVID-19 variants mitigate the effectiveness of the Moderna vaccine to such an extent that the vaccine no longer provides individuals with effective protection. However, Singh has not demonstrated that such is the case today and, it bears emphasizing, the burden falls upon Singh to demonstrate that compassionate release is warranted.").

At this time, this Court's assessment should be driven by the prevailing scientific view that vaccination makes extremely rare, and possibly eliminates entirely, the risk of severe disease from the virus.

The result therefore will not be different if the defendant changes his mind and takes the vaccine, as all public health officials advise, as that action would also preclude compassionate release grounded on COVID-19. *See, e.g.*, *United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) (Ludington, J.) ("absent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)."). Absent a dramatic change in the current scientific assessment regarding the efficacy of the vaccines, the advent of widespread vaccine availability should bring to an end this unprecedented period in which compassionate release has been available based on the threat of the virus. Instead, sentence reductions based on medical conditions once again should be limited to extraordinary conditions that are terminal or severely limit an inmate's ability to function in a correctional setting. *See, e.g.*, *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (Johnson, J.) (relief is "rare" and "extraordinary"); *United States v. Lisi*, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020) (Failla, J.) ("a defendant's medical condition must be one of substantial severity and irremediability"); *United States v. Polnitz*, 2020 WL 1139836, at *2 (E.D. Wis. Mar. 9, 2020) (Pepper, J.) (must be extraordinary; "Many inmates suffer from pain and mental illness."). At present, the defendant does not present any such condition.

In short, Korff has not demonstrated any circumstances particular to him that justify the requested relief. Korff' generalized fear of contracting COVID-19 is not enough. The Third Circuit has ruled that an inmate's risk of contracting COVID-19 cannot alone justify release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("the possibility that it may spread to a particular prison alone cannot independently justify compassionate release"). To the extent that Korff does allege particularized circumstances, such as his complaint regarding behavior by staff at FCI Coleman-Medium, these appear to have been addressed by his transfer to FCI Jesup. Thus, Korff' circumstances do not afford him relief.

At bottom, Korff has not demonstrated any extraordinary or compelling circumstances particular to him that justify compassionate release. Korff's fear of contracting COVID-19 and dissatisfaction with BOP staff is not enough. In this regard, the Third Circuit has already ruled in a precedential opinion that an inmate's risk of contracting COVID-19 cannot alone justify release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("the possibility that it may spread to a particular prison alone cannot independently justify compassionate release").

## V.   The § 3553(a) Factors Weigh Against Release.

Because Korff has not set forth any cognizable basis for his requested relief, the Court need not reach the question of whether the § 3553(a) factors otherwise justify his release, though the Government respectfully submits that they do not. At sentencing, the Court balanced the § 3553(a) factors, and determined that a 110-month term of imprisonment was sufficient but not greater than necessary to accomplish the goals of sentencing. Respectfully, the same § 3553(a) factors, applied today and in view of Korff' lack of any additional medical condition as well as his vaccine refusal, warrant requiring Korff to fulfill the full term of his sentence.

Korff's crimes—the illicit, online international sale and shipment of lethal toxins and chemicals—are serious. 18 U.S.C. §§ 3553(a)(1) and (a)(2)(A). Korff was arrested after an extensive investigation and undercover operation in which Korff prepared, marketed, sold, packaged, and transported lethal toxins, including ricin and abrin, internationally from his residence. PSR ¶ 10-63. Korff also provided another with explicit instructions on how to murder another individual with his lethal toxins. *Id.* Such conduct requires a serious sentence in order to promote respect for the law. Korff's history and characteristics also weigh against release. 18 U.S.C. § 3553(a)(1). While, Korff had accumulated only two criminal history points, an individualized assessment of these offenses and the punishments imposed, *see* PSR ¶¶ 105a-115, more than justifies the imposed 110-month sentence. Specifically, Korff's prior arrest are all as a juvenile and all for conduct relating to the possession of narcotics and weapons

- 14 -

and theft.  Moreover, the offense conduct committed by Korff, at a young age, was of a sophisticated nature which warrants the sentence imposed.

In fact, Probation determined, and this Court agreed, that Korff' applicable guidelines range under the U.S. Sentencing Guidelines was 168 to 210 months.  *Id.* ¶ 183.  As such, the 110-sentence imposed by this Court afforded Korff a notable break below the guidelines range.

The need for deterrence weighs heavily against early release.  18 U.S.C. §§ 3553(a)(2)(B)-(C).  Korff's serious criminal conduct demonstrates a real concern, and early release would not serve to deter Korff from returning to dangerous toxin trafficking, cyber-crimes, or other offenses.  Similarly, early termination of Korff' sentence would not send a message of deterrence to other would-be chemical toxin traffickers.  Finally, completion of the sentence imposed by this Court would help avoid sentencing disparities among similarly situated defendants. 18 U.S.C.  § 3553(a)(6).  This is particularly true where, as here, the defendant already received the benefit of a below guidelines sentence.

In sum, compassionate release would not promote the interests of sentencing here.  Even if the Court chose to conduct the § 3553(a) analysis, Korff's offense and the totality of relevant circumstances do not warrant the relief he requests.

## VI.    **Conclusion**

Accordingly, this Court should deny Korff's motion for home confinement because only the BOP can grant that form of relief.  In addition, Korff has not met § 3582(c)(1)(A)'s criteria for compassionate release.

Respectfully submitted,

RACHAEL A. HONIG
Acting United States Attorney

By:

Kendall Randolph
Special Assistant U.S. Attorney

cc:    Jesse William Korff, *pro se* (by first class mail)
       Register No. 60154-018
       Federal Correctional Institute Jesup
       2600 Highway 301 South
       Jesup, GA  31599